IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MAURY SCHUH                                                          PLAINTIFF

V.                                                    CAUSE NO.: 1:13CV101-SA-DAS

TOWN OF PLANTERSVILLE, MISSISSIPPI                          DEFENDANT

## MEMORANDUM OPINION

Defendant Town of Plantersville, Mississippi has filed a Motion for Summary Judgment in this case. After reviewing the motion, response, rules, and authorities, the Court finds as follows:

*Factual and Procedural Background*

Plaintiff Maury Schuh filed this action under Title VII, Sections 1983 and 1981, the First Amendment to the Constitution, as well as Mississippi state law following his termination of employment as the Chief of Police for the Town of Plantersville.

Schuh, a Caucasian male, was hired as the Town of Plantersville's Chief of Police in May of 2010 on recommendation of the Caucasian mayor, Gloria Holland, and approved by a majority-Caucasian Board of Aldermen. Schuh was suspended with pay following a June 5, 2012, Board meeting so that an investigation could be completed regarding citizen complaints of his performance as Chief of Police. Schuh was given the opportunity to respond to the Board's concerns, but was terminated by the same Board that hired him on July 17, 2012.

Plaintiff contends his termination was motivated by race, in retaliation for exercising his First Amendment free speech rights, and because of his military service obligations. Schuh further claims he was terminated for refusing to engage in illegal activity. The Town of

Plantersville has filed a Motion for Summary Judgment arguing that all of Plaintiff's claims should be dismissed.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

*Discussion and Analysis*

I.    *Mississippi Department of Employment Security (MDES) Proceedings*

Plaintiff seeks to have the Court recognize the preclusive effect of the findings by the MDES as to Plaintiff's First Amendment retaliation, Sections 1981 and 1983, USERRA, and state public policy claims.[1]   In particular, Plaintiff contends that the following facts are established by the MDES decision:

1.  There is no evidence that Schuh violated any policy during the incident involving him preventing a suicide or shooting a vicious dog.

2.  There is no evidence that Schuh violated any policy by the "ride along" program.

3.  There is no evidence that Schuh went over his DARE budget, coerced subordinates to write tickets, acted aggressive at city meetings or was insubordinate to City officials.

4.  The Town failed to prove that Schuh was terminated for misconduct.

Under Mississippi law, four elements are required for collateral estoppel to apply. "The party must be seeking to relitigate a certain issue, that issue must already have been litigated in a prior action, the issue must have been determined in the prior suit, and the determination of the issue must have been essential to the prior action." Stafford v. True Temper Sports, 123 F.3d 291, 295 (5th Cir. 1997) (citing Raju v. Rhodes, 7 F.3d 1210, 1215 (5th Cir. 1993), cert. denied, 511 U.S. 1032, 114 S. Ct. 1543, 128 L. Ed. 2d 194 (1994)).

The law is clear that "when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it

---

[1] Plaintiff acknowledges that the findings of MDES are not preclusive as to the Title VII claim as there is a detailed administrative remedy for that claim. See Thomas v. La. Dep't of Social Servs., 406 F. App'x 890, 894-95 (5th Cir. 2010) (noting that the Fifth Circuit Court of Appeals has "unanimously concluded that unreviewed administrative agency findings can never be accorded issue preclusive effect in subsequent Title VII proceedings.").

would be entitled in the State's courts." <u>Univ. of Tenn. v. Elliott</u>, 478 U.S. 788, 799, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986) (internal quotation marks, alteration, and citation omitted). "Under Mississippi law, res judicata or collateral estoppel precludes re-litigation of administrative decisions." <u>Smith v. Univ. of Miss.</u>, 797 So. 2d 956, 963 (Miss. 2001); <u>Zimmerman v. Three Rivers Planning & Dev. Dist.</u>, 747 So. 2d 853, 861 (Miss. Ct. App. 1999). "'Once an agency decision is made and the decision remains unappealed beyond the time to appeal, it is barred by administrative res judicata or collateral estoppel.'" <u>A & F Prop., LLC v. Madison Cnty. Bd. Of Sup'rs</u>, 933 So. 2d 296, 302 (Miss. 2006) (quoting <u>Zimmerman</u>, 747 So. 2d at 861).

While unreviewed state administrative fact-finding is never entitled to preclusive effect in actions under Title VII, that is not so as to claims brought under Section 1981. <u>See</u> <u>Elliott</u>, 478 U.S. at 796-97, 106 S. Ct. 3220 (applying collateral estoppel to state administrative fact-findings for purposes of sections 1981 and 1983 but not for purposes of Title VII, and explaining that "Congress in enacting the Reconstruction civil rights statutes, did not intend to create an exception to general rules of preclusion"). <u>See</u> <u>also</u> <u>Jett v. Dallas Indep. Sch. Dist.</u>, 798 F.2d 748, 763 n.14 (5th Cir. 1986) (noting that in some respects relief is available under Title VII where it is not under sections 1981 and 1983, and citing <u>Elliott</u> for recognition of difference in application of collateral estoppel to the latter but not the former). Thus, since Mississippi courts give preclusive effect to the decisions of the MDES, if supported by the evidence and in the absence of fraud, then so should this court. <u>See</u> <u>Cox v. Desoto County</u>, 564 F.3d 745, 748 (5th Cir. 2009). Indeed, "[a] rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise." <u>Sprouse v. MESC</u>, 639 So. 2d 901, 902 (Miss. 1994). However, this Court is not required to apply collateral estoppel even if it is

warranted as collateral estoppel is "neither mandatory nor mechanically applied." Marcum v. Miss. Valley Gas Co., 672 So. 2d 730, 733 (Miss. 1996); Alexander v. MedPoint Prof'l Staffing, LLC, 2013 U.S. Dist. Lexis 102096 (N.D. Miss. July 22, 2013).

Defendant contends that the burden of proof demanded of the employer at an MDES proceeding precludes application of collateral estoppel to the issues asserted by the Plaintiff. In an MDES proceeding, the employer has the burden of establishing that the claimant was discharged for misconduct connected to the employment by "substantial, clear, and convincing evidence." Gibson v. Miss. Dep't of Empl. Sec., 130 So. 3d 563, 565 (Miss. Ct. App. 2014); Gore v. Miss. Employ. Sec. Comm'n, 592 So. 2d 1008, 1010 (Miss. 1992); MISS. CODE ANN. § 71-5-513A(1)(c). The Town of Plantersville was unable to meet that burden on appeal to the MDES Commission.

The claims brought by Plaintiff, here, however, have a different burden of proof. Aside from the "shifting burden" under the McDonnell Douglas analysis for Title VII and Sections 1981 and 1983 claims, the Plaintiff is tasked with proving his case by a "preponderance of the evidence," a lesser burden than clear and convincing evidence. See Herman & MacLean v. Huddleston, 459 U.S. 375, 387, 103 S. Ct. 683, 74 L. Ed. 2d 548 (1983) (noting that "in a typcal civil suit for money damages, plaintiffs must prove their case by a preponderance of the evidence"). Moreover, the burden on the employer under McDonnell Douglas is only one of "articulation" of a legitimate non-discriminatory reason for the adverse employment action. Indeed, Plaintiff carries the ultimate burden at all times. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (holding that "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff").

Defendant argues it would be unfair to credit to Plaintiff facts and conclusions which the employer was unable to prove by clear and convincing evidence, but that, in this action, the Plaintiff would only have to show by a preponderance of the evidence. Defendant likens the Plaintiff's proposition for preclusive effect in this litigation to the inapplicability of collateral estoppel of earlier civil proceedings to criminal elements. Indeed, the Mississippi Supreme Court has noted:

> In civil cases collateral estoppel functions as though it were a rule of evidence. It stipulates how certain facts may be established at trial. Where an issue of fact is actually litigated and resolved in one trial and where that fact was essential to the judgment in the first trial, that fact is taken as established in subsequent trials involving the same parties. The fact thus need not be - and cannot be - relitigated in the second trial. The party in whose favor such fact was resolved in the first trial is said to enter the second trial with that fact established in his favor. This notion works reasonably well in civil litigation, where facts are established by a preponderance of the evidence, because their existence is by a factor of 51 to 49 more probable than not.

> But it doesn't work at all in criminal cases. This is so because by no stretch of the imagination can a not guilty verdict be said to establish affirmatively that the defendant was innocent of the crime.

> Technically speaking, a not guilty verdict means that the jury failed to find beyond a reasonable doubt that the defendant was guilty. The jury may well have concluded that there was strong evidence against the defendant though of a lesser dignity than beyond a reasonable doubt. For example, the jury may have found by a preponderance of the evidence that the defendant was guilty. The jury may even have considered that the evidence of guilt was clear and convincing but because it did not rise to the dignity of beyond a reasonable doubt nevertheless, taking their oaths seriously, the jurors returned a not guilty verdict.

Sanders v. State of Mississippi, 429 So. 2d 245, 251 (Miss. 1983).

The Court finds this reasoning persuasive. Here, the MDES found that the employer failed to prove that Schuh was discharged for misconducted connected with his work by clear and convincing evidence; however, there is no indication if that entity could have found misconduct by a preponderance of the evidence. Therefore, the Court, acknowledging that

collateral estoppel is not mandatory or mechanically applied, refuses to recognize the preclusive effect of determinations made by the MDES on the basis of a higher burden of proof required before the administrative agency.

II.    *Race Discrimination*

Plaintiff brings race discrimination claims pursuant to Title VII and under 42 U.S.C. Sections 1983 and 1981.  Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* and 42 U.S.C § 1983 provide parallel causes of action for public employees alleging racial discrimination and require the same proof to establish liability. Davis v. Dallas Indep. Sch. Dist., 448 F. App'x 485, 490-91 (5th Cir. 2011) (citing Lauderdale v. Tex. Dep't of Crim. Justice, 512 F.3d 157, 166 (5th Cir. 2007)). Therefore, the elements of a prima facie case of race-based employment discrimination pursuant to Section 1983 are the same as those in a Title VII case, and the McDonnell Douglas burden-shifting framework applies to both cases.

Under the McDonnell Douglas framework, the plaintiff-employee has the initial burden of making a prima facie showing of discrimination. Turner v. Kan. City S. Ry. Co., 675 F.3d 887, 892 (5th Cir. 2012). The plaintiff establishes a prima facie case of employment discrimination by showing he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." Fahim v. Marriott Hotel Servs., 551 F.3d 344, 350 (5th Cir. 2008) (quoting McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007)) (internal quotation marks omitted).

Once the plaintiff-employee makes this showing, the burden shifts to the defendant-employer to articulate—but not prove—a legitimate, nondiscriminatory reason for the adverse

employment action. <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 49 n.3, 124 S. Ct. 513, 157 L. Ed. 2d 357 (2003). "The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, 'if believed by the trier of fact,' would support a finding that unlawful discrimination was not the cause of the employment action." <u>Bauer v. Albemarle Corp.</u>, 169 F.3d 962, 966 (5th Cir. 1999) (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506-08, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)). This burden does not involve a credibility assessment. <u>Reeves</u>, 530 U.S. at 142, 120 S. Ct. 2097.

If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, "the 'mandatory inference of discrimination' created by the plaintiff's prima facie case 'drops out of the picture' and the factfinder must 'decide the ultimate question: whether [the] plaintiff has proved [intentional discrimination].'" <u>Russell v. McKinney Hosp. Venture</u>, 235 F.3d 219, 222 (5th Cir. 2000) (quoting <u>Hicks</u>, 509 U.S. at 511-12, 113 S. Ct. 2742. After the employer articulates a legitimate non-discriminatory reason for the adverse employment action, "[t]he plaintiff, who always carries the ultimate burden, 'must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).'" <u>Assariathu v. Lone Star Health Mgmt. Assocs.</u>, 516 F. App'x 315, 2013 U.S. App. LEXIS 4597, at *6 (5th Cir. Mar. 6, 2013) (unpublished opinion) (quoting <u>Rachid v. Jack In The Box, Inc.</u>, 376 F.3d 305, 312 (5th Cir. 2004)).  In making his showing on this ultimate question, "the plaintiff can rely on evidence that the employer's reasons were pretext for unlawful discrimination," <u>Russell</u>, 235 F.3d at 222, and the factfinder "may still consider the evidence establishing the plaintiff's prima

facie case 'and inferences properly drawn therefrom[.]'" <u>Evans v. City of Houston</u>, 246 F.3d 344, 350 (5th Cir. 2001) (quoting <u>Reeves</u>, 530 U.S. at 143, 120 S. Ct. 2097).

Plaintiff can easily show the first three elements of his prima face case for race discrimination. However, Defendant alleges that Plaintiff cannot meet the fourth prong as he was not "replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." Defendant argues that even though Shirley Bogan Moon, an African-American female, served as temporary interim Chief of Police after Schuh's termination, Schuh was permanently replaced by a white male, Mark Covington.

Defendant contends that the Court should analyze whether Shirley Moon, an African American female, was Plaintiff's temporary or permanent replacement for purposes of the fourth prong analysis of a prima facie case. <u>See</u> <u>Mercer v. Capitol Mgmt. & Realty</u>, 242 F. App'x 162, 163 (5th Cir. 2007) (affirming district court grant of summary judgment on the basis that plaintiff failed to prove her prima facie case by offering no proof to rebut the employer's assertion that the person replacing her was not her permanent replacement, but only an interim holder of that position). A district court in the Southern District of Texas granted summary judgment against a plaintiff who failed to meet prima facie burden where the person who replaced plaintiff was of the same race, despite the interim replacement being outside the protected class. <u>Ashagre v. Southland Corp.</u>, 546 F. Supp. 1214, 1219-20 (S.D. Tex. 1982). The court relied on the Fifth Circuit's reasoning in <u>Marks v. Prattco, Inc.</u>, 607 F.2d 1153 (5th Cir. 1979), that the prima facie case is a presumption that the employer discriminated, and based on the policy underlying the burden-shifting analysis establishment, the "vital inquiry in the determination of a prima [facie] case is whether there is an *inference* of discrimination." <u>Id.</u> at 1220.

The Eleventh Circuit has more explicitly commented on a plaintiff's failure to establish a prima facie racial discrimination case where the ultimate, or permanent, replacement was a person in the same protected class.  See Hawkins v. Ceco Corp., 883 F.2d 977 (11th Cir. 1989); see also Lewis v. St. Cloud State Univ., 467 F.3d 1133 (8th Cir. 2006) (finding no age discrimination prima facie case made where plaintiff was temporarily replaced by the associate dean, over six years his junior, and was permanently replaced eight months later by a person two years older). The Eleventh Circuit indicated that to surpass the prima facie case, which creates an inference of discriminatory intent in the employment action, the "plaintiff must develop a record to show that a purported replacement actually performed the plaintiff's duties." Id. at 982 (citing Jones v. Western Geophysical Co. of America, 669 F.2d 280 (5th Cir. 1982)).  That Court held:

> Replacement by a non-minority is the fourth element of a prima facie case because it is evidence of preferential treatment for nonminorities in the work place. Where the worker assumed no additional benefits by performing some of the discharged employee's duties, there is no indication of preferential treatment.

Id. at 983.

The Plaintiff counters by citing cases discouraging the temporary/permanent distinction in a prima facie case where evidence is presented by plaintiff that either the temporary or permanent replacement is set up merely as a ruse to obfuscate discrimination laws. Plaintiff cites Moini v. University of Texas at Austin, 832 F. Supp. 2d 710 (W.D. Tex. 2011), for the proposition that courts have recognized that employers can "game the system" by firing someone and temporarily replacing him or her with a token member of the same protected class.  Indeed, that court held that the plaintiff failed to establish a prima facie case of discrimination by failing

to create a genuine dispute of material fact as to whether his temporary replacement, a person of his same national origin, was merely a ruse to hide discrimination.[2]

The evidence presented here shows that while Schuh was Chief of Police, Shirley Bogan Moon, an African American female, was the Assistant Chief of Police. As the Assistant Chief of Police, Moon was second in command at the police department. Moon was only licensed by the State to work part-time and was paid on an hourly basis. Moon's certification to work part-time meant that she could only work full-time for one year under her certification.

Moon became the interim Chief of Police by Board action during Schuh's initial two week suspension. In fact, the minutes read:

> Vicki Rigby made the motion to suspend Police Chief Schuh with pay for 2 weeks, but he is to attend the classes he has started this week and work the Grand Jury's case's [sic]. Also to put Deputy Chief Shirley Moon as interim Police Chief during this 2 week period. Ketrick Marion seconded the motion. All were in favor.

No other evidence of Board of Aldermen action as to Moon's appointment as interim or permanent replacement to Schuh after the two week period is evident from the record. Moon's hourly wage was not increased as a result of her assumption of the Chief of Police duties,[3] and she was in that position for five months until her resignation in December of 2012. Schuh admits that he only has knowledge that Moon was named as interim police chief, and has no knowledge as to whether she was hired to permanently replace him.

---

[2] Plaintiff also cites a Sixth Circuit case, <u>Aquino v. Honda of Am., Inc.</u>, 158 F. App'x 667 (6th Cir. 2005), which held that temporary work schedule evidence during the time the plaintiff was suspended, not terminated, did not tell the court whether he was permanently replaced by a person outside his protected class. However, a co-worker's affidavit that after plaintiff's termination, there were no employees in that division of the same race as plaintiff was enough proof that plaintiff was replaced by someone outside his protected class.

[3] It is undisputed that the Chief of Police position is a salaried position within the Town of Plantersville.

Mark Covington, a white male, was hired to permanently replace Schuh.  The minutes of the December 4, 2012, Board of Aldermen meeting state as follows:

Mark Covington – Police Chief

> Vicki Rigby made the motion to name Mark Covington as Police Chief on a 90 day probation. His salary will be $1080.00 every two weeks, plus he will be issued health insurance.  Any hours worked over the 80 hour per pay period will be comp. time. Jack Wuichet seconded the motion. All were in favor.

The Court finds ample evidence that Schuh's permanent replacement was Mark Covington, a Caucasian male.  Therefore, Schuh was not replaced by someone outside his protected class and he has failed to satisfy his prima facie burden.  Even if he could surpass this initial burden, however, the Plaintiff fails to satisfy the Court as to the remaining McDonnell Douglas framework.

The Town of Plantersville asserts several performance issues in his role as Chief of Police for Schuh's suspension and ultimate termination.  According to the affidavits attached to the Motion for Summary Judgment, the Aldermen cited many issues they independently investigated to constitute their legitimate non-discriminatory reasons for his termination:

a. The police department budget was consistently in the red.

b. Several police officers were complaining that Schuh directed them to write tickets for infractions they did not witness.

c. The Aldermen were offended by Schuh's behavior at the June 5, 2012 Board meeting in which he acted "unprofessional" and "insubordinate".

d. The "Ride Along" policy, instituted by Schuh was outside the scope of his authority and exposed the City to unnecessary liability.

e. Twenty to thirty Plantersville citizens appeared at the June 5, 2012 Board Meeting to complain about Schuh's alleged harassment and use of excessive force in exercising his Chief of Police duties.

After independently investigating all these claims, the Board voted to terminate Plaintiff's employment with the City. The Court finds that the Town of Plantersville has surpassed its burden of showing a legitimate non-discriminatory reason for Schuh's termination.

Defendant asserts that pursuant to the "same actor inference," Plaintiff is unable to show that their proffered reason for his termination was pretextual. Indeed, the Fifth Circuit has recognized that it "hardly makes sense for an employer to hire employees from a group against which [the employer] bears [] animus and then turn around and fire them once they are on the job." Hervey v. Miss. Dep't of Educ., 404 F. App'x 865, 871 (5th Cir. 2010). The "same-actor inference" is based on common sense and mitigates against a finding of pretext, requiring a plaintiff like Schuh to come forward with more than a tenuous inference of pretext to meet his burden of proof. Anderson v. Miss. Baptist Med. Ctr., 2011 U.S. Dist. LEXIS 92656, 2011 WL 3652210, *3 n.4 (S.D. Miss. Aug. 18, 2011).

Initially, the Court recognizes the "fundamental and inviolable policy" of the State of Mississippi that the exclusive means by which a municipal government can enter a contract or amend or alter any contract entered by the municipality is through public action by the city's board of aldermen, which "must be evidenced by an entry on its minutes." Williamson Pounders Architects, P.C. v. Tunica County, Miss., 681 F. Supp. 2d 766, 772 (N.D. Miss. 2008), aff'd, 597 F.3d 292, 296-97 (5th Cir. 2010). The Mississippi Supreme Court has consistently and routinely held that "boards of supervisors and other public boards speak only through their minutes and

their actions are evidenced solely by entries on the minutes." <u>Thompson v. Jones County Community Hosp.</u>, 352 So. 2d 795, 796 (Miss. 1977). The court explained:

> A board of supervisors can act only as a body, and its act must be evidenced by an entry on its minutes . . . The individuals composing the board cannot act for the county, nor officially in reference to the county's business, except as authorized by law, and the minutes of the board of supervisors must be the repository and the evidence of their official acts.

<u>Thompson</u>, 352 So. 2d at 796.

Here, Mayor Gloria Holland recommended Maury Schuh as the Town of Plantersville's Chief of Police at the May 25, 2010 Board meeting. Vicki Rigby made the motion to hire Schuh and a majority of the Board agreed. The same Board of Aldermen was in place for Schuh's subsequent suspension and termination. That same Board voted to suspend and terminate him. Accordingly, Defendant is entitled to the same actor inference.

In support of his argument that the Town's reason for termination was pretextual or that race was a motivating factor in his termination, Plaintiff relies on the findings of the MDES that the employer failed to prove misconduct. As noted above, the Court does not recognize the preclusive effect of those findings. Moreover, even if the Court were to consider the MDES findings, those findings are not necessarily dispositive as to Plaintiff's burden. Indeed, the MDES found only that with regard to a call about a vicious pit bull, a suicide attempt, and the Ride Along policy, "[n]o evidence was presented either through witnesses or documentation to show the claimant was not following procedures when these events occurred." Schuh admitted by email to his officers that the "Ride Along" policy that he implemented was without Board approval, outside the scope of his authority, and that "[b]ecause this is a policy, it had to be approved by the Board and should have been reviewed by the Town Attorney." The policy was rescinded immediately. No summary judgment record evidence suggests that the Board of

Aldermen specifically considered an incident in which Schuh's reaction to a pit bull and attempted suicide were considered in his termination proceeding.

The MDES officer further noted that "claimant was accused of going over budget with his DARE expenditures, coercing subordinates to write tickets, acting aggressive at city meetings, and of being insubordinate to city officials. The claimant denied all of the allegations." Plaintiff's sworn testimony before this Court is that he knew he was over budget while the Chief of Police and admitted requesting his officers to write tickets to persons based on infractions those officers did not personally witness. In fact, one officer testified that she wrote a ticket at Chief Schuh's insistence, which was later retired to the file because she could not definitively say in court she had witnessed it. The MDES findings are not preclusive as to Plaintiff's pretext burden, and even if they were considered, do not evidence any racial animus on the part of the Board.

Schuh also notes that he was accused of having "racist" tattoos by Board member Sextus Shannon in November of 2011, and told by Mayor Gloria Holland that the Town of Plantersville needed a African American police chief. When questioned about his race discrimination claims, Schuh testified that because of his vocalization over the preferential treatment of Caucasian persons in the Town of Plantersville, he was no longer "aligned with a racial group that could protect me." He claims he was terminated in order to "appease the black community" by removing him and placing more African Americans in the position of power.

Although not explicitly pled as a theory of liability, the Court considers these allegations of a "Cat's Paw" theory of liability. Normally, when an "ordinary employee" recommends termination of a plaintiff employee for a discriminatory reason, evidence of such animus is not typically attributable to the employer who ultimately terminates the employee. However, if the

plaintiff can demonstrate that others had influence or leverage over the official decisionmaker, the discriminatory attitudes of the co-workers could be imputed to the formal decisionmaker if the plaintiff can show two things: (1) that a co-worker "exhibited discriminatory animus" and (2) the same co-worker "possessed leverage or exerted influence over the titular decisionmaker." Roberson v. Alltel Info. Servs., 373 F.3d 647, 653 (5th Cir. 2004). Indeed, the question thus becomes "whether the board's decision to terminate [the plaintiff] was tainted by [the co-worker's] alleged animus – i.e., whether the board acted as the 'cat's paw.'" Richardson v. Prairie Opportunity, Inc., 470 F. App'x 282, 284 (5th Cir. 2012). Pertinent to this theory of liability is whether the plaintiff presents proof that the co-workers recommended his termination, and that the employer relied on the "negative feedback" from the co-workers. See Coleman v. Jason Pharm., 540 F. App'x 302, 305 (5th Cir. 2013). If not, the causal link between the co-worker's alleged animus and the plaintiff's termination is broken, and the plaintiff cannot recover against the employer. Richardson, 470 F. App'x at 285 (citing Staub v. Proctor Hosp., --- U.S. ---, 131 S. Ct. 1186, 1191, 179 L. Ed. 2d 144 (2011)).

Pursuant to the Employee Handbook of the Town of Plantersville, "[t]he Mayor shall be the Administrative Officer of the municipality and report to the Board of Aldermen. The Mayor shall recruit and recommend employees for positions authorized by the Board of Aldermen. Hiring of employees will be the responsibility of the Board of Aldermen." Indeed, all testimony in the record indicates that the Board of Aldermen was the only entity charged with employment decisions in the Town of Plantersville. As such, Plaintiff has offered no evidence imputing the alleged remarks of Mayor Holland to the Board of Aldermen, or even individual Board member Shannon to the entire Board. Further, Plaintiff has presented no argument or basis of knowledge

that the Board of Aldermen knew of any alleged "racist" tattoos[4] or of Mayor Holland's alleged remark regarding an African American police chief. Moreover, after reviewing the Plaintiff's allegations and time period in which he contends they were made, the Court finds the comments allegedly made about the "racist" tattoos and needing an African American police chief are too vague and remote in time to establish discrimination. See Spears v. Patterson UTI Drilling Co., 337 F. App'x 416, 420 (5th Cir. 2009) (where plaintiff could neither date nor link racially derogatory remarks to the decision-maker, such comments were insufficient to support a claim of discrimination); Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir. 1996).

The United States Supreme Court has acknowledged the imposition of cat's paw liability on an employer where that entity relied on facts provided by the biased employee, thus "effectively delegate[ing] the factfinding portion of the investigation to the biased supervisor." Staub, --- U.S. ---, 131 S. Ct. at 1193, 179 L. Ed. 2d 144. However, "[a]n independent investigation fairly conducted usually prohibits the ultimate decisionmaker from being a 'rubber stamp' because it acts as a superseding cause to the termination decision." Gorman v. Verizon Wireless Tex., LLC, 753 F.3d 165, 172 (5th Cir. 2014).

Here, the testimony of the Aldermen and Mayor reflect that once the twenty or thirty citizens showed up at the June 5, 2012 Board Meeting to complain about Shuh's activities as police chief, the Board members engaged in an independent investigation of those claims during Schuh's suspension. Therefore, the Court finds that the independent fact-finding investigation undertaken by the Board negates cat's paw liability as to Gloria Holland.

As to the Board's list of reasons he was terminated, Schuh admitted that while he was Chief of Police, the police department budget was consistently over. When questioned whether

---

[4] Plaintiff contends Shannon misunderstood Schuh's tattoo "AB+" as evidence that he was involved in the Aryan Brotherhood, instead of his blood type.

he ever asked a subordinate officer to write a ticket for an individual that committed a traffic violation that he or she did not personally see, Schuh answered, "As I recall, yes, I did." As noted above, Schuh acknowledged that the "Ride Along" policy that he put in place as police chief was improper, as it was not supported by Board action, and exposed the Town to unnecessary liability.

"[A] plaintiff is required to rebut each nondiscriminatory reason articulated by his employer to carry his burden of demonstrating pretext." Laxton v. Gap, 333 F.3d 572, 578 (5th Cir. 2003). Plaintiff has failed to rebut many of those reasons and has indeed failed to show that racial animus played a role or was a motivating factor in his termination. Accordingly, Plaintiff has failed to overcome the burden of demonstrating his termination was motivated by racial animus or that the Town's lengthy list of performance issues was pretext for his termination because of his race. Further, there is no proof or allegation that the Board of Aldermen relied on facts provided by the Mayor or Shannon individually in making the decision to terminate Schuh.

Plaintiff's Title VII, and Sections 1983 and 1981 claims are dismissed.

III.     *First Amendment Retaliation*

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006) (citations omitted). To establish a First Amendment retaliation claim, a plaintiff must show "that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." Gibson v. Kilpatrick, 734 F.3d 395, 400 (5th Cir. 2013) (citing Juarez v. Aguilar, 666 F.3d 325, 332 (5th Cir. 2011)). The Fifth Circuit has recognized

that in <u>Garcetti</u>, the Supreme Court "added a threshold" consideration to the second "public concern" inquiry. <u>Davis v. McKinney</u>, 518 F.3d 304, 312 (5th Cir. 2008). "We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." <u>Garcetti</u>, 547 U.S. at 421, 126 S. Ct. 1951. Whether an employee's speech is protected under the First Amendment is an issue of law. <u>Elizondo v. Parks</u>, 431 F. App'x 299, 303 (5th Cir. 2011) (citing <u>Charles v. Grief</u>, 522 F.3d 508, 512 (5th Cir. 2008)).

Schuh contends he was terminated in retaliation for exercising his First Amendment free speech rights. In particular, he asserts he was terminated in July of 2012 for seeking to make the Christmas parade of 2011 "multicultural." Schuh advocated for the allowance of an African American Santa Claus to ride in the parade and voiced his preference for a menorah to be placed in the Town Hall holiday display in November of 2011.

Defendant contends that Plaintiff cannot show that the speech motivated his termination. Indeed, Defendant asserts the Board of Aldermen did not know of Plaintiff's suggestions to the Christmas parade. Plaintiff admits that the only persons he discussed his preference for a "multicultural" Christmas parade experience were Norma Ballard, the Caucasian City Clerk, and Jay Curry, the Caucasian fire chief. Schuh could not recall bringing up his concerns during a Board Meeting. Schuh had no proof that he had informed the Board members of his preference for the Christmas parade, and the Board members denied knowing anything about his concerns.

Accordingly, Plaintiff has presented no evidence that the speech motivated his termination, and this claim must be dismissed.

IV.    *Violation of the Uniformed Services Employment and Reemployment Rights Act (USERRA)*

The Uniformed Services Employment and Reemployment Rights Act ("USERRA") provides that a person "shall not be denied employment, reemployment, retention in employment, promotion, or any benefit of employment" because of the person's military service. 38 U.S.C. § 4311(a). An employer violates USERRA when "membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor" in an employment decision. 38 U.S.C. § 4311(c)(1). Under USERRA, the plaintiff has the burden of proving discriminatory motive. See Sheehan v. Dep't of the Navy, 240 F.3d 1009, 1012-13 (Fed. Cir. 2001).

Plaintiff asserts that one reason his employment was terminated was due to his military service obligations.  He claims that Betty Pearson, the budget consultant for the Town, complained about the costs to the Town when he was out of town attending military functions. Plaintiff had no information as to whether Betty Pearson, a Caucasian female, complained to the Board.  Plaintiff further states that the city judge questioned him about who would handle cases when he was on a possible future deployment.  He, again, has no evidence that the city judge informed the Board of his concerns.  Further, Schuh acknowledged that he was engaged in military service at the time the Board voted on his hire.

"[M]ilitary status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." Coffman v. Chugach Support Servs., Inc., 411 F.3d 1231, 1238 (5th Cir. 2005).  Plaintiff has provided no evidence that his military service obligations was considered in his termination.  Further, Plaintiff has not shown that Betty Pearson, as a consultant hired by the City, or the city judge had such leverage or

influence with the Board as to impute any discriminatory animus on the decision made in this case. Accordingly, Plaintiff has failed to carry his burden as to this claim as well.

V.    *Violation of Mississippi Public Policy*

Mississippi has long recognized the employment-at-will doctrine. See <u>Kelly v. Miss. Valley Gas Co.</u>, 397 So. 2d 874, 874 (Miss. 1981). "[A]bsent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible." <u>Shaw v. Burchfield</u>, 481 So. 2d 247, 253-54 (Miss. 1985).

The exception to that rule, alleged here, is <u>McArn v.Allied Bruce-Terminix Co.</u>. 626 So. 2d 603, 607 (Miss. 1993). In <u>McArn</u>, the Mississippi Supreme Court held that the employment-at-will doctrine does not apply when an employee is discharged because he or she refused to participate in an illegal activity or has reported the illegal activity of his employer. <u>Hammons v. Fleetwood Homes of Miss., Inc.</u>, 907 So. 2d 357, 360 (Miss. Ct. App. 2004) (noting that for the exception to apply, "the acts complained of [must] warrant the imposition of criminal penalties, as opposed to mere civil penalties"); <u>see also</u> <u>Kyle v. Circus Circus Miss., Inc.</u>, 430 F. App'x 247 (5th Cir. 2011) (following <u>Hammons</u> and limiting <u>McArn</u> to acts that relate to criminal, not civil, penalties); <u>Wheeler v. BL Dev. Corp.</u>, 415 F.3d 399, 404 (5th Cir. 2005).

Here, Schuh contends he was terminated for refusing to send in false payroll information to a Mississippi agency. According to Plaintiff, the Town of Plantersville qualified for a state funded grant that would pay for hours worked by officers to enforce the state mandates. Schuh contends his termination resulted from his refusal to send in allegedly falsified payroll reports showing Mark Covington to have worked hours toward that state grant, when he was really not

working at all. Because he refused to send in that report in April of 2012, Plaintiff argues that the close temporal proximity to his termination satisfies his burden on summary judgment.

Plaintiff stated that Mark Covington, Shirley Moon, and two other police department employees would have knowledge of the alleged false payroll request. Plaintiff contends that he told Norma Ballard, the City Clerk, and Mayor Gloria Holland that he would not send in the allegedly falsified records, but did not bring up this incident at his termination hearing to the Board of Aldermen.

There is no evidence that the Board of Aldermen, the undisputed decision-making body of the Town of Plantersville, requested that Schuh participate in illegal acts or had knowledge of the alleged request for criminal conduct. See Buchanan v. Ameristar Casino Vicksburg, Inc., 852 So. 2d 25, 27 (Miss. 2003) (finding no McArn violation where plaintiff made no allegation that she was terminated for refusing to participate in illegal acts at the request of the employer or that she was terminated for reporting illegal acts performed by the employer). Accordingly, Plaintiff has failed to put forth evidence of a causal connection between his alleged refusal to commit a purported criminal activity and his termination. Dismuke v. City of Indianola, 32 F. App'x 126, *4 (5th Cir. 2002) (holding that plaintiff must present evidence establishing causation between the reporting of the alleged misconduct and the decision process resulting in the discharge); Kent v. Vicksburg Healthcare, LLC, 2012 U.S. Dist. Lexis 59928, 2012 WL 1556511, *15 (S.D. Miss. Apr. 30, 2012) (granting summary judgment where the court was unable to determine that the decision maker was aware of the report of illegal activity, and even if the decision maker had been aware, there was no evidence to show that the decision to terminate was based on the alleged reports).

*Conclusion*

After reviewing the record evidence in this case, the Court finds that summary judgment is appropriate as to all claims. Accordingly, Plaintiff's claims are dismissed, and this case is CLOSED.

SO ORDERED, this the 22nd day of August, 2014.

 **/s/ Sharion Aycock_____**
**U.S. DISTRICT JUDGE**